FILED - WAWB
FEB 23 2026 3:09 PM
Gina Zadra Walton, Clerk of Court

NOTE ON MOTION CALENDAR:
March 5, 2026 at 9:30 a.m.
Courtroom 7206, Seattle.
**ORAL ARGUMENT REQUESTED.**

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>RONDA MCNAE,<br><br>Debtor. | CASE NO. 26-10051-CMA<br><br>Chapter 7<br><br>**NON-DEBTOR WILLIAM MCNAE'S EXPEDITED MOTION TO QUASH OR, IN THE ALTERNATIVE, MODIFY SUBPOENAS DUCES TECUM TO FINANCIAL INSTITUTIONS, FOR PROTECTIVE ORDER, AND FOR COST SHIFTING** |

**NOTE ON EXPEDITED RELIEF**

Subpoena compliance is demanded by March 9, 2026. Movant is concurrently filing an Ex Parte Motion to Shorten Time and for Interim Relief. Movant requests an interim order directing each subpoenaed institution to pause subpoena compliance work and production and to refrain from incurring compliance costs pending the Court's ruling. Movant will serve the filed motion and any interim order on each subpoena compliance unit immediately upon filing.

## I. RELIEF REQUESTED

Non-Debtor spouse William McNae ("Movant") moves for an order (a) **quashing the subpoena served on KeyBank, N.A. or, in the alternative, modifying it** to prevent production of nonparty records and to require staged, transaction targeted production under a protective order, and (b) **modifying and narrowing** the subpoenas served on JPMorgan Chase Bank, N.A. and Ally Bank to require staged, transaction targeted production under a protective order. Movant further requests interim pause and cost protections applicable to all institutions served in the same set of subpoenas to prevent production and fees before the Court adjudicates scope.

Movant requests that the Court enter an order:

**Interim relief applying to all subpoenaed institutions:**

1. **Immediate Pause.** Each financial institution served shall pause all search, processing, vendor engagement, fee incurrence, and production activity pending further order.

2. **Cost Shifting.** Creditor Michael Fitzgerald ("Creditor") must advance and pay all institution compliance fees and vendor charges. No institution may assess, debit, or collect subpoena compliance fees from any account holder in connection with these subpoenas. Creditor shall pay institutions directly upon invoice.

**Merits protocol applying immediately to Chase, Ally, and KeyBank:**

3. **Nonparty Owner Exclusion and Staged Identification First.** As to JPMorgan Chase Bank, N.A., Ally Bank, and KeyBank, N.A., no institution may search for or produce records for any account unless, as of the subpoena service date, (a) the

account is titled to Ronda McNae and/or William McNae, and (b) no nonparty is listed as an owner on the account. Any account on which a nonparty is listed as an owner as of the subpoena service date is excluded from search and production absent further order entered after notice to the nonparty and an opportunity to be heard.

4. **KeyBank Carve Out and Further Protection.** As to KeyBank only, no search or production for any account listing nonparty Marjorie E. McNae as an owner as of the subpoena service date, absent further order entered after notice to her and opportunity to be heard. KeyBank's internal titling conventions for power-of-attorney access do not establish beneficial ownership or any estate interest in the underlying funds. Any Phase 2 production requires further court order defining narrow date range and transaction-specific categories.

5. **Threshold Motion Requirement.** If Creditor seeks Phase 2 production or records from any account excluded by the nonparty owner exclusion or KeyBank carve out, Creditor must first file a motion supported by declaration identifying the account by last four digits, the specific transactions at issue, the narrow date range requested, and why the information cannot be obtained from accounts owned by Ronda McNae or William McNae. *This threshold motion requirement allocates the burden to Creditor consistent with Rule 45(d)(1)'s duty to avoid undue burden and expense.*

6. **Category Limits.** No account opening packets, signature cards, applications, communications, or phone call transcriptions absent further order upon a particularized showing of necessity.

7. **Time Limits.** Any permitted production must be limited to a narrowly tailored time window tied to identified transactions, not a blanket multi-year period.

8. **Confidentiality.** Any permitted production must be treated as Confidential, used only for this bankruptcy case, not disseminated to nonparties, and not filed on the docket absent redaction and leave of Court.

## II. BACKGROUND

**A. The subpoena series and March 9 production deadline**

Debtor Ronda McNae filed this Chapter 7 case. William McNae is a non-debtor spouse. Creditor served template subpoenas on multiple financial institutions with a production deadline of March 9, 2026.

The Court's Rule 2004 order authorized subpoenas only in accordance with Rule 2004 and Rule 45 and did not pre-approve Creditor's template Exhibit A demand list. The subpoenas nevertheless adopt template definitions and Exhibit A demand lists, including an expansive "interest" theory and broad "any and all" categories that predictably trigger overproduction, privacy harm, and significant compliance fees. *See* **Exhibit 4** (KeyBank subpoena).

Movant seeks immediate relief as to three institutions that present the greatest risk of immediate and irreparable harm. JPMorgan Chase Bank, N.A. (joint accounts), Ally Bank (Movant's accounts), and KeyBank, N.A. (nonparty family privacy). The remaining institutions either do not appear to maintain accounts for Movant based on Movant's current information, or present materially less risk of immediate nonparty disclosure. Movant does not waive objections as to any subpoena, but requests the Court's immediate intervention where the harm and cost risk is most acute.

**B. Conferral and refusal to narrow**

From February 17 through February 19, 2026, Movant conferred in good faith with Creditor's counsel to avoid motion practice and to narrow the subpoenas consistent with the Court's Rule 2004 order and Rule 45. Movant proposed a staged protocol beginning with account identification only, exclusion of accounts with nonparty owners absent further order after notice, narrowed time limits tied to identified transactions, and exclusion of high burden categories such as account opening files and phone call transcriptions.

Creditor refused to adopt any limiting protocol and insisted that broad historical production would proceed. Creditor's counsel confirmed in writing that "the scope of the subpoenas does not identify specific accounts," that *"What accounts are responsive will be determined by the information maintained by the banks,"* and that counsel *"cannot give any assurances as to what accounts the institutions will consider responsive."* **Exhibit 1**.

Because Creditor declined to narrow the subpoenas or to provide account level specificity, and instead delegated responsiveness determinations to the banks, court intervention is necessary to prevent overinclusive production, nonparty disclosure, and avoidable compliance costs.

**C. KeyBank presents heightened third party privacy risk**

KeyBank is unique because its records include nonparty financial information, including accounts associated with nonparty Marjorie E. McNae and a nonparty co-owner. KeyBank's internal process for power of attorney access required Movant's name to be added to two of Marjorie E. McNae's accounts to allow bill payment and account management. KeyBank implemented that process by listing Movant as a co-owner. That administrative titling does not reflect beneficial ownership of the funds.

Because the KeyBank subpoena defines responsive accounts using an elastic "interest" and name based approach, it predictably causes overinclusive production and third party privacy harm unless the Court imposes a bright line protocol excluding any account on which a nonparty is listed as an owner as of the subpoena service date, absent further order entered after notice to the nonparty and an opportunity to be heard. The Court should therefore impose staged identification and a nonparty owner carve out before any production occurs.

**D. Compliance fees are foreseeable and significant**

Financial institutions routinely charge subpoena and legal process fees. Movant has experienced automatic per account fees in prior collection activity. The current subpoenas demand costly and intrusive categories across multiple institutions. Movant has previously incurred automatic per-account garnishment fees at Chase Bank arising from collection activity tied to this same creditor, underscoring the foreseeability of similar charges here. Without a court supervised protocol and cost shifting, Creditor's subpoena series externalizes compliance costs onto account holders and third parties before the Court adjudicates scope.

**E. Protective order is required to prevent collateral use and repeat misuse**

A protective order is necessary because Creditor has previously litigated confidentiality disputes and sought to use protected materials outside the originating forum. In related proceedings, a protective order governing "Confidential" and "Attorneys' Eyes Only" material limited use to the action and appeals and restricted public filing absent sealing or court protection. *See* **Exhibit 5**.

In a related state court matter, Defendant moved to enforce that protective order, asserting that Creditor transcribed and publicly filed material designated Attorneys' Eyes Only. *See* **Exhibit 6 (¶7-15).**

This history supports a narrowly tailored protective order here, limiting any bank production to "bankruptcy use only," restricting dissemination, and requiring redaction and leave of Court before any public filing. Absent a protective order, Rule 2004 becomes a back door mechanism for obtaining private financial information for other forums. The Court should impose the requested conditions under Fed. R. Bankr. P. 9018 and 9016.

### III. STANDING

Movant William McNae has standing because the subpoenas seek records tied to him and threaten disclosure of his private financial information and third party information linked through his name. Under Fed. R. Civ. P. 45(d)(3), incorporated by Fed. R. Bankr. P. 9016, the Court may quash or modify a subpoena to protect a person subject to or affected by the subpoena.

Movant seeks immediate protocol relief focused on JPMorgan Chase Bank, N.A., Ally Bank, and KeyBank, N.A. due to imminent disclosure harm and compliance cost risk. Movant does not waive objections as to other subpoenas and requests that any interim pause and cost shifting provisions apply to all subpoenaed institutions pending further order.

### IV. LEGAL STANDARD

1. **Rule 2004 purpose and limits.** Rule 2004 permits broad examination and discovery, but it is not unlimited. Discovery must remain tied to matters bearing a reasonable nexus to the debtor's financial affairs, administration of the estate, and discharge issues. It may not be

used to harass or to obtain unrelated non debtor or third party financial records without a defined bankruptcy purpose.

2. **Rule 45 applies to quash or modify.** Fed. R. Bankr. P. 9016 incorporates Fed. R. Civ. P. 45. Under Rule 45(d)(3), on a timely motion the Court may quash or modify a subpoena to protect a person subject to or affected by the subpoena, and must quash or modify a subpoena that subjects a person to undue burden or requires disclosure of protected matter. The Court may also impose specified conditions, including staged production, as an alternative to quashing.

3. **Undue burden, expense, and cost protections.** Rule 45 obligates the issuing party to take reasonable steps to avoid undue burden or expense. Where compliance would impose significant expense on a nonparty, the Court may limit scope and impose appropriate cost protections, including requiring the issuing party to pay reasonable compliance costs.

4. **Protective orders and nonparty protections.** Fed. R. Bankr. P. 9018 authorizes protective orders to protect confidential information and prevent collateral use. Where subpoenas are template based, not account specific, and rely on elastic "interest" or naming conventions across multiple institutions, judicial supervision is warranted to ensure proportionality and protect nonparties from irreversible disclosure before scope is adjudicated.

## V. ARGUMENT

**A. The subpoenas are facially overbroad and not proportional**

Creditor sought and obtained an ex parte Rule 2004 order based on a proposed template subpoena attached as Exhibit A to his motion. **Exhibit 2.** That template defines "ACCOUNT" to

include any account for which Debtor and or "NON DEBTOR ENTITIES" have an "interest," and then demands an "any and all" production of broad categories, including statements, checks, correspondence, deposit slips, signature cards, applications, wire requests, account opening documents, and phone call transcriptions for January 2022 through present. **Exhibit 2**.

The Court did not approve that template scope. In entering the Rule 2004 order, the Court modified the proposed language and authorized subpoenas only "in accordance with Fed. R. Bankr. P. 2004 and Fed. R. Civ. P. 45." **Exhibit 3**. The entered order therefore preserved Rule 45's proportionality and nonparty protections and did not pre-approve a blanket "any and all" demand list.

Notwithstanding the Court's modification, Creditor served subpoenas that track the same template definitions and file dump categories. The KeyBank subpoena, for example, sets a March 9, 2026 compliance deadline and demands expansive categories for any account swept in by the subpoena's elastic "interest" and name based definitions, without identifying account numbers or limiting requests to specific, estate related transactions. **Exhibit 4**. Creditor's counsel also concedes that the subpoenas do not identify specific accounts and that banks will determine responsiveness, with no assurances against overinclusive production. **Exhibit 1**. That approach is inconsistent with Rule 45's duty to avoid undue burden and expense and warrants court supervised staging, nonparty owner protections, and targeted production.

.

**B. The "interest" standard invites bank-driven fishing and must be replaced with a clear protocol**

The subpoenas rely on an "interest" formulation that blurs the line between legal title, historical association, and true third-party ownership, inviting banks to sweep in nonparty accounts. Banks are likely to construe "interest" broadly, leading to overinclusive production untethered to the debtor's actual estate. The Court should replace this amorphous "interest" test with a clear, administrable protocol.

Staged account identification, coupled with categorical exclusion of accounts that include nonparty owners, is the appropriate first step. If Creditor believes records from an excluded account are truly necessary, Creditor should be required to move for further relief supported by a particularized showing, specific transactions, and a narrow date range. This structure properly allocates the burden to the party seeking expanded discovery.

**C. KeyBank requires a nonparty carve out to prevent third party harm**

KeyBank production poses an acute risk of exposing nonparty Marjorie E. McNae's account activity, including her Social Security and Teachers' Retirement benefits, simply because Movant was added as a co-owner for power-of-attorney access. KeyBank's internal titling conventions do not reflect beneficial ownership or any estate interest in those exempt funds.

The Court should order that any KeyBank account listing Marjorie E. McNae as an owner as of the subpoena service date be excluded from search and production absent further order entered after notice to her and an opportunity to be heard.

**D. Category limits are required to reduce burden and cost**

Even if limited production is authorized later, the Court should exclude high-burden categories absent further order—specifically account opening packets, signature cards,

applications, communications, and phone call recordings/transcriptions. These categories drive disproportionate fees and privacy intrusions disproportionate to legitimate Rule 2004 purposes. Creditor may seek them only on particularized showing tied to specific estate issues.

### E. Cost shifting is required

The breadth of Creditor's template subpoenas makes third party compliance expense foreseeable and substantial. Rule 45 requires the issuing party to take reasonable steps to avoid undue burden and authorizes the Court to protect a nonparty from "significant expense" resulting from compliance by conditioning production on cost protections, including shifting reasonable compliance and vendor charges to the issuing party. **Exhibit 4**.

Accordingly, any production order should require Creditor to advance and pay subpoena compliance fees and vendor costs directly. It should also prohibit any institution from assessing or debiting fees against consumer accounts before scope is adjudicated, because automatic debits would impose the very harm Rule 45 is designed to prevent.

### F. Protective order and "bankruptcy use only" restrictions are required

Bank records contain highly sensitive personal and third-party financial information; once disclosed, the privacy harm is irreparable. The Court should condition any production on strict confidentiality and use restrictions under Fed. R. Bankr. P. 9018.

This request is supported by the record of Creditor's history litigating confidentiality disputes and misusing protected materials outside the originating forum. **Exhibit 5**. In related federal proceedings, a protective order governed "Confidential" and "Attorneys' Eyes Only" material, limiting use to that action and appeals while restricting public filing absent sealing. In a

related Florida state court matter, Defendant moved to enforce that order after Creditor transcribed and publicly filed Attorneys' Eyes Only material without seal or leave. **Exhibit 6**.

Any permitted bank production must therefore be designated Confidential, limited to "bankruptcy use only," restricted from nonparty dissemination, and filed publicly only with redaction and Court leave. Absent these conditions, Rule 2004 risks becoming a backdoor for collateral use in non-bankruptcy collection actions. Creditor's counsel's debt collector notice, that "information obtained will be used for that purpose" further justifies express "bankruptcy use only" limits. Nonparty records, once produced, cannot be "unproduced."

## VI. REQUESTED ALTERNATIVE PROTOCOL AND LIMITATIONS

If the Court does not quash the subpoenas, Movant requests the following clear, administrable protocol to minimize burden and protect nonparty privacy while preserving any legitimate discovery needs.

### A. Phase 1. Account Identification Only

Within a deadline set by the Court, each subpoenaed institution shall provide either:

1. A certification that it located **no accounts** responsive to the subpoena as limited by this Order, or
2. A list limited to: (a) the **last four digits** of each account number, (b) **account type**, and (c) the **names on title** as of the date of subpoena service.

No statements, transaction histories, check images, deposit items, wire records, or other transactional records shall be produced in Phase 1.

### B. Phase 2. Transaction Targeted Production Only

No transactional records shall be produced unless and until:

1. Phase 1 is complete, and
2. The subpoenaing party obtains a further order authorizing production that identifies (a) specific transaction categories and (b) a narrow date range.

Any Phase 2 order should exclude categories not expressly authorized and should limit production to documents necessary to identify the specified transactions.

### C. Automatic Exclusions Absent Further Order

Absent further order, no institution shall produce, and no party shall request, any of the following categories:

1. Account opening documents, signature cards, applications, or related onboarding materials.
2. Customer communications, internal bank notes, complaint files, or similar non transactional materials.
3. Audio recordings or transcripts of calls or other communications.

### D. Nonparty Carve Out for Marjorie E. McNae

Absent further order, KeyBank shall not search for or produce records for any account for which Marjorie E. McNae is listed as an owner as of the date of subpoena service.

Any request to include such accounts must be brought by motion on notice to Marjorie E. McNae, with an opportunity to be heard. The motion must identify specific transaction categories and a narrow date range. Movant shall serve Marjorie E. McNae with any such motion.

### E. Cost Allocation and Confidentiality

1. **No Account Debits.** No subpoenaed institution may assess, debit, or collect subpoena compliance fees from any consumer account holder in connection with these subpoenas pending further order.

2. **Cost Allocation.** Any compliance or vendor costs shall be advanced by the subpoenaing party, subject to later reallocation by the Court.

3. **Confidentiality.** Any production shall be treated as **Confidential, Bankruptcy Use Only**, and used solely for purposes of this bankruptcy case and related contested matters. It shall not be disseminated to nonparties. It shall not be filed on the public docket absent appropriate redaction and compliance with applicable rules, or further order.

## VII. CONCLUSION

Movant does not resist legitimate estate discovery but seeks staged identification, nonparty protections, and Court supervision *before* irreversible production, costs, and privacy harms occur. Movant respectfully requests an interim pause order and, on the merits, that the Court quash the KeyBank subpoena or alternatively modify all three subpoenas per the above protocol, nonparty protections, cost shifting, and confidentiality terms—together with such further relief as the Court deems just.

Respectfully submitted,

/s/ **William McNae**
William McNae
Non-Debtor spouse, Affected Party
504 11th Pl
Kirkland, WA 98033
(425) 941-7374

# CERTIFICATE OF SERVICE

I certify that on February 23, 2026, I served a true and correct copy of Non-Debtor William McNae's Motion to Quash or Modify Subpoenas and Ex Parte Motion to Shorten Time for Hearing, together with the Underlying Declaration, all Exhibits, and the Proposed Order, on the parties and recipients listed below by the methods indicated.

| Recipient | Method |
|---|---|
| **Michael P. Klein**<br>**Chapter 7 Trustee**<br>300 Madison AVE S.<br>Bainbridge Island, WA 98110<br>trusteeklein@hotmail.com | ☒ Via electronic mail |
| **U.S. Trustee for Region 18**<br>700 Stewart Street, Suite 5220<br>Seattle, WA 98101<br>USTP.Region18@usdoj.gov | ☒ Via U.S. Mail, postage prepaid |
| **JPMORGAN CHASE BANK, N.A.**<br>Subpoenas Dept<br>Mail Code LA2-7300,<br>1414 Woodward Avenue,<br>Ruston, LA 71270-2015 | ☒ Via U.S. Mail, postage prepaid |
| **KEYBANK LEGAL**<br>ATTN: Subpoena Processing<br>Mail: OH-01-49-3001<br>4900 TIEDEMAN ROAD,<br>BROOKLYN, OH 44144<br>Fax: 1-216-357-6675<br>Email:judgment_processing2@keybank.com<br>subpoenaoperations@keybank.com | ☒ Via electronic mail<br>☒ Via U.S. Mail, postage prepaid |
| **Ally Bank / c/o STINSON LLP**<br>19100 Von Karman AVE, #700<br>IRVINE, CA 92612<br><br>**Ally Financial Inc.**<br>711 CAPITOL WAY S STE 204,<br>OLYMPIA, WA, 98501-1267 | ☒ Via electronic mail<br>☒ Via U.S. Mail, postage prepaid |
| **Counsel for Judgment Creditor: Michael Fitzgerald**<br>Michael M Sperry<br>Schweet Linde Rosenblum, PLLC<br>5601 6TH Ave S., #258<br>PO Box 80646<br>Seattle, WA 98108<br>michaels@schweetlaw.com | ☒ Via electronic mail<br>☒ Via U.S. Mail, postage prepaid |

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

DATED this 23rd day of February, 2026, at Kirkland, Washington.

Respectfully submitted,



*/s/ William McNae*
William McNae
Non-Debtor spouse, Affected party
Pro Se
504 11th Pl
Kirkland, WA 98033
(425) 941-7374