*Pro Se 2026*

FILED - WAWB

APR 02 2026 6:43 PM

Gina Zadra Walton, Clerk of Court

Judge: Hon. Christopher M. Alston
Chapter: 7
Hearing Location: Seattle
Hearing Date: May 7, 2026
Hearing Time: 9:30 a.m

UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF WASHINGTON

In re:

    RONDA MCNAE,

          Debtor.

CASE NO. 26-10051-CMA
Chapter 7

**DEBTOR'S MOTION FOR STATUS CONFERENCE AND TO PRESERVE RECORD REGARDING PREPETITION ENFORCEMENT CONDUCT**

## I.     INTRODUCTION

Debtor files this Motion to preserve the record concerning the prepetition enforcement conduct that directly forced this bankruptcy filing. Debtor does not seek through this Motion to adjudicate a future adversary proceeding, relitigate the underlying judgment, or obtain merits relief on claims pending elsewhere. Debtor seeks narrower relief. Debtor asks this Court to preserve the

**DEBTOR'S MOTION FOR STATUS CONFERENCE
AND TO PRESERVE RECORD REGARDING PREPETITION
ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 1

chronology that immediately preceded the petition date, allow the relevant documents to be placed before the Court in an orderly way, and set a status conference so that any later dispute involving creditor litigation, estate administration, exemptions, abandonment, or litigation-related property is evaluated against a complete record.

This bankruptcy did not arise in a vacuum. Before the petition date, creditor-side enforcement escalated through a sequence of events that included a disputed home execution, the deliberate concealment of the writ from the docket, the real-time relay of financial account information obtained during that execution to creditor's counsel, a same-day garnishment application targeting Debtor's, non-debtor's spouse's, and non-party mother-in-law's bank accounts, and a scheduled sheriff's sale of Debtor's litigation rights. Debtor attempted to stop that sale before it occurred, including by appearing in person at the King County Sheriff's Office on January 7, 2026. But the execution process was not reflected through the kind of ordinary, reviewable sheriff-filed record that would have allowed a meaningful and timely challenge in the usual course, and the sale proceeded. Debtor filed Chapter 7 on January 8, 2026.

Because creditor is likely to seek further relief in connection with this bankruptcy, Debtor files this Motion now to ensure that later proceedings are not framed as though the petition resulted from ordinary collection activity alone. The Court and trustee should have the prepetition chronology before them now. Debtor therefore respectfully requests limited case-management relief to preserve that record and guide any later proceedings in an orderly manner.

## II.    RELIEF REQUESTED

Debtor respectfully requests narrow procedural relief directed to preservation of the record and orderly administration of this case. Debtor asks that the Court:

**DEBTOR'S MOTION FOR STATUS CONFERENCE
AND TO PRESERVE RECORD REGARDING PREPETITION
ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 2

1. Accept this Motion, declaration, and exhibits as a limited record-preservation filing concerning the prepetition enforcement conduct that directly led to the bankruptcy filing;

2. Set a status conference at the Court's earliest convenience to address the appropriate procedural treatment of these issues in the main case and in any later related dispute;

3. Permit Debtor to preserve and supplement the main-case record with the attached chronology and supporting documents for use, if necessary, in any later matter involving creditor litigation, estate administration, exemptions, abandonment, stay-related issues, or litigation-related property or proceeds;

4. Clarify that Debtor is not seeking through this Motion to adjudicate the merits of a future adversary proceeding, relitigate the underlying judgment, or obtain sanctions at this time; and

5. Award such additional case-management relief as is necessary to ensure that later proceedings are not conducted against an incomplete factual record.

6. Order that creditor provide advance notice to Debtor of any motion, application, or request for relief filed in this bankruptcy case, including any request for Rule 2004 examination authority, and that no such relief be granted on an ex parte basis without prior notice to Debtor, given the documented history of creditor-side enforcement activity conducted without ordinary docket transparency in the prepetition state court proceedings.

## III.    FACTUAL BACKGROUND

The following chronology is supported by Debtor's declaration filed concurrently herewith, which incorporates by reference the exhibits and federal court record described below. This Court

**DEBTOR'S MOTION FOR STATUS CONFERENCE**
**AND TO PRESERVE RECORD REGARDING PREPETITION**
**ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 3

Case 26-10051-CMA    Doc 99    Filed 04/02/26    Ent. 04/03/26 08:28:23    Pg. 3 of 14

is respectfully referred to *McNae v. King County*, No. 2:25-cv-02710-JNW (W.D. Wash.) for the full documentary record.

1. On November 18, 2025, creditor-side counsel Jacob Rosenblum wrote to the King County Sheriff's Civil Unit stating that he had spoken with Detective Debby Schmitz and that she was amenable to obtaining a writ of execution that same day "so that the debtor will not discover that there is a writ of execution issued when checking the docket," and that the execution was scheduled for November 19, 2025. McNae Decl. ¶4; Ex. 1.

2. On November 18, 2025, the writ was signed by King County Superior Court Judge Ketu Shah and received by KCSO Civil at 2:43 p.m. The writ was presented by Schweet Linde & Rosenblum, PLLC, and directed the Sheriff to levy upon all non-exempt personal property, including all causes of action belonging to Ronda McNae and the marital community, and authorized break-and-enter pursuant to RCW 6.17.160. *McNae v. King County*, Dkt. 16, Ex. A; Dkt. 33, Ex. 2.

3. On November 19, 2025, King County Sheriff personnel executed the writ at Debtor's residence at 504 11th Place, Kirkland, Washington. Produced text messages reflect that Detective Schmitz met creditor's attorney Connor Morgan at a PetroCard gas station before proceeding to the residence. During the execution, Detective Schmitz texted Morgan: "We are chatting and searching." Morgan responded: "Excellent. What are the vibes like?" Morgan then asked: "Hi Debbie! Quick question for ya, did you see an old lady approximately 85 years living at the McNae house? Or any evidence of an old lady living there?" Schmitz responded: "No, but they mentioned they had some of her stuff there. Only kids bedrooms and parents master." McNae Decl. ¶6; Ex. 3.

**DEBTOR'S MOTION FOR STATUS CONFERENCE
AND TO PRESERVE RECORD REGARDING PREPETITION
ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 4

4. The KCSO Deputy Worksheet prepared for the execution contains handwritten entries referencing Harborstone, Wells Fargo, Chase, First Tech Federal, KeyBank account number ████9804, and Ally Bank account number ████0387, the latter being Will McNae's account. The worksheet was prepared before the execution and assigned to Detective Schmitz. McNae Decl. ¶5; Ex. 2.

5. On November 19, 2025, the same day as the execution, creditor's counsel filed garnishment applications targeting Ally Bank and KeyBank accounts, including Will McNae's accounts, in King County Superior Court Case No. 25-2-19105-2 SEA. *McNae v. King County*, Dkt. 33, Ex. 3.

6. On December 24, 2025, Rosenblum texted Detective Schmitz: "Got $18k on bank garnishment for Ally Bank from our friends the McNaes. Merry Christmas!" McNae Decl. ¶7; Ex. 4

7. On November 20, 2025, a Sheriff's Notice of Levy and Notice of Sale was transmitted by creditor's counsel's office, not filed by the Sheriff through the ordinary docket, directing the sale of "any and all claims and/or causes of action" belonging to Ronda McNae and the marital community, including the ARAG Legal "bad-faith insurance" federal case, at public auction on January 7, 2026. That same day, creditor's counsel Rosenblum emailed KCSO Civil Sales acknowledging that William McNae is not a judgment debtor, while simultaneously directing the Sheriff to revise the notice language to reach marital community property held in Will's name. The account numbers recorded on the Deputy Worksheet during the November 19 execution had been used that same day to file garnishment applications targeting accounts belonging to a person creditor's own counsel

**DEBTOR'S MOTION FOR STATUS CONFERENCE
AND TO PRESERVE RECORD REGARDING PREPETITION
ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 5

acknowledged was not the judgment debtor. McNae Decl. ¶9; Ex. 6; *McNae v. King County*, Dkt. 16, Ex. C; Dkt. 33, Ex. 7.

8. The state-court docket in Case No. 25-2-19105-2 SEA reflects that Docket Entry 92, captioned as a Sheriff's Return on Execution of Personal Property, was filed by creditor's attorney on November 18, 2025, one day before the execution occurred. It was returned to the court by counsel, not the Sheriff, contains no post-execution report of proceedings, no levy decision, no inventory, and no sheriff signature. It predates execution and cannot, as a matter of law, memorialize execution that had not yet occurred. In other King County execution matters handled by the same creditor-side law office and the same deputy, the docket reflects standard filings: issued praecipes, sheriff's returns, affidavits of mailing, and extension orders filed in proper sequence. See King County Superior Court Case No. 25-2-10299-B SEA; McNae Decl. ¶13; Ex. 10. No comparable post-execution return exists in Case No. 25-2-19105-2 SEA. *McNae v. King County*, Dkt. 16, Ex. F; McNae Decl. ¶20; Ex. 14.

9. Debtor contemporaneously attempted to determine how and where to challenge the writ and sale. In an email exchange with court staff, Debtor asked about the writ and why the proceedings were not appearing through the ordinary record. Judge Shah's bailiff, Rebecca Hibbs, responded that "Judge Shah made no rulings in this case" and directed Debtor to Judge Scott's chambers because the matter was currently assigned there. McNae Decl. ¶11; Ex. 8

10. On December 31, 2025, Debtor filed a renewed emergency motion for temporary restraining order in the federal civil-rights action seeking to halt the January 7 sale. That same day, creditor's counsel sent a "global resolution" email indicating that creditor would

**DEBTOR'S MOTION FOR STATUS CONFERENCE**
**AND TO PRESERVE RECORD REGARDING PREPETITION**
**ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 6

credit bid the following week to levy on the McNaes' ARAG claims. *McNae v. King County*, Dkt. 11.

11. On January 6, 2026, King County internal emails reflect that personnel intended to proceed with the January 7 sale absent an entered stopping order. Silvia Sinea wrote that creditor's attorney had submitted the opening bid and had not mentioned any order canceling the sale, stating "it sounds like we are set for tomorrow." Later that day, Erin Overbey wrote that "it sounds like you will proceed with the sale" after a phone call with creditor's counsel. *McNae v. King County*, No. 2:25-cv-02710-JNW, Dkt. 39 ¶11.

12. On January 7, 2026, the federal district court entered an order denying Debtor's renewed TRO motion on Anti-Injunction Act grounds, acknowledging that the sheriff's sale was scheduled to proceed that day. *McNae v. King County*, Dkt. 21 (Order Denying TRO, Jan. 7, 2026). McNae Decl. ¶14; Ex. 11

13. On January 7, 2026, Debtor and spouse appeared in person at the King County Sheriff's Office Civil Unit counter, the location designated in the Notice of Sale, and formally objected to the sale. No docket entry in Case No. 25-2-19105-2 SEA reflects that objection. The sale was not noticed or docketed through the ordinary state court enforcement record, and no mechanism existed within that record for Debtor to lodge a formal written objection through the clerk in the usual course. The absence of any docket record of Debtor's objection is therefore a direct consequence of the same execution opacity described throughout this chronology and should not be construed as acquiescence or waiver.

14. The sale proceeded through a credit bid of $25,000 purporting to reach Debtor's litigation interests. The Sheriff's return was not filed to court following the sale because the bankruptcy filing intervened the following day. A voicemail from Silvia Sinea of the

**DEBTOR'S MOTION FOR STATUS CONFERENCE**
**AND TO PRESERVE RECORD REGARDING PREPETITION**
**ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 7

Case 26-10051-CMA    Doc 99    Filed 04/02/26    Ent. 04/03/26 08:28:23    Pg. 7 of 14

KCSO Civil Process Unit subsequently confirmed that the property was sold back to creditor for a credit bid and that, because of the bankruptcy filing, the return to court was held pending instruction from creditor's counsel or County counsel. McNae Decl. ¶12; Ex. 9.

15. Debtor filed this Chapter 7 case on January 8, 2026, the day after the sale. As declared in the related federal action, the cascading consequences of the November 19 execution, including the use of financial account information obtained during that execution, the same-day garnishment activity targeting a non-debtor spouse's accounts, and the auction of Debtor's litigation interests through a credit bid that left the transfer legally incomplete, left no viable alternative but bankruptcy protection. McNae Decl. ¶16

16. On February 25, 2026, during the oral hearing, this Court commented on the use of ex-parte subpoena requests and stated to Mr. Sperry that "next time he won't do that because it does create some confusion".

17. On April 2, 2026, the date of this filing, creditor served a Notice of Subpoena Duces Tecum in this bankruptcy case directed to Key Investment Services LLC, commanding production of records connected to Debtor and William McNae. Despite this Court's prior admonition, this subpoena request was again filed ex parte. The subpoena defines "ACCOUNT" to include any checking, savings, or brokerage account in which "DEBTOR and/or NON-DEBTOR ENTITIES have an interest," and is not limited to accounts belonging to the Debtor. The Notice of Subpoena and authorizing order are filed in this bankruptcy case at Bk. Dkt. 95 and 97 respectively.

18. Key Investment Services, LLC holds accounts belonging to Marjorie McNae, William McNae's mother, who is not a party to this proceeding and is not a judgment debtor.

**DEBTOR'S MOTION FOR STATUS CONFERENCE AND TO PRESERVE RECORD REGARDING PREPETITION ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 8

19. The creditor's interest in Marjorie McNae appears to trace directly to the November 19, 2025 execution of a writ at the McNae residence. During that execution, creditor's attorney Connor Morgan texted Detective Schmitz asking: "Hi Debbie! Quick question for ya, did you see an old lady approximately 85 years living at the McNae house? Or any evidence of an old lady living there?" The KCSO Deputy Worksheet from that same execution contains account information associated with Marjorie McNae recorded during the search. McNae Decl. ¶5, filed herewith; Ex. 2.

## IV.    WHY THIS RECORD MATTERS IN BANKRUPTCY

The petition date and the issues likely to arise in this bankruptcy case cannot be understood in isolation from the prepetition enforcement conduct that immediately preceded the filing. This Court has authority under 11 U.S.C. § 105(a) to issue any order necessary or appropriate to carry out the provisions of the Bankruptcy Code, including orders directed to the orderly preservation of the record and the management of proceedings. Debtor is not asking this Court to adjudicate any future adversary proceeding, determine ultimate ownership of litigation claims or proceeds, or relitigate the underlying judgment. Debtor's narrower point is that any later dispute in this case should proceed against a complete factual record, not a truncated one.

First, the chronology bears directly on why the petition was filed when it was filed. The record reflects escalating enforcement activity directed at Debtor's asserted litigation rights, including the November 19 execution, the immediate use of information obtained during that execution for same-day garnishment applications, the January 7 sheriff's sale of Debtor's causes of action, Debtor's unsuccessful effort to stop that sale (including in-person objection at the Sheriff's

**DEBTOR'S MOTION FOR STATUS CONFERENCE**
**AND TO PRESERVE RECORD REGARDING PREPETITION**
**ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 9

Case 26-10051-CMA    Doc 99    Filed 04/02/26    Ent. 04/03/26 08:28:23    Pg. 9 of 14

Office on the sale date), and the filing of this Chapter 7 case on January 8, 2026, the following day.

Second, the chronology bears on fair presentation of any later creditor position. Creditor may later seek to characterize the bankruptcy filing, oppose exemptions, contest treatment of litigation-related property, influence abandonment questions, or file adversary litigation. The Court and trustee should not be asked to evaluate those positions as though the petition arose from ordinary collection activity alone. The existing record reflects disputed execution conduct, deliberate concealment of the writ from the docket, real-time coordination between Sheriff personnel and creditor's counsel during the execution, an execution paper trail that departs materially from how the same law office and the same deputy operate in other King County matters, and a sale process that moved forward while Debtor was simultaneously attempting to obtain judicial relief and objecting in person.

Third, the chronology bears on any future dispute involving litigation-related property or proceeds. The prepetition enforcement conduct specifically targeted asserted causes of action and attempted to convert them into auction or levy subjects immediately before the petition date. The credit bid occurred but the sheriff's return was never filed to court because the bankruptcy intervened, leaving the status of that sale incomplete as a matter of the state-court record. Any later request by creditor to reach litigation-related property or proceeds should be evaluated with the full prepetition record in view, including the circumstances under which those claims were targeted and the manner in which the sale process was pursued.

Fourth, Debtor may need to raise the execution record discrepancies in King County Superior Court Case No. 25-2-19105-2 SEA to preserve the record in that forum, including the absence of a post-execution Sheriff's Return under RCW 6.17.120, the absence of a sheriff-filed

**DEBTOR'S MOTION FOR STATUS CONFERENCE
AND TO PRESERVE RECORD REGARDING PREPETITION
ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 10

proof of statutory service or mailing under RCW 6.17.130, the pre-execution dating of Docket Entry 92, and the incomplete status of the sale return. Debtor raises this here not to seek leave from this Court to pursue state-court relief, but to inform the Court that such preservation activity may be necessary in the parallel forum and to ensure that the bankruptcy court and trustee are not operating from a fragmentary picture of the related proceedings.

Debtor also notes, without seeking relief through this Motion, that creditor's March 30, 2026 status report to the Eleventh Circuit in Appeal No. 25-11685 characterized this Court's Agreed Order (Bk. Dkt. 94) in a manner that Debtor believes omitted the order's express enforcement limitations under paragraph 2; the status conference requested herein would provide an appropriate opportunity to address how this Court's orders are being characterized in parallel proceedings if the Court deems it warranted.

The request for a prospective notice requirement is grounded in the documented prepetition record, not in abstract concern. That record begins at the threshold of this enforcement sequence. The underlying Florida judgment was domesticated in King County Superior Court on June 30, 2025, commencing a collection proceeding that Debtor contends was marked from its earliest stages by enforcement activity that outpaced notice. Creditor's counsel then coordinated with Sheriff personnel to obtain the writ of execution specifically so that Debtor would not discover it by checking the docket. McNae Decl. Ex. 10. The November 19 execution, the same-day garnishment applications, and the Notice of Levy were all initiated or transmitted in ways that bypassed the ordinary sheriff-filed docket trail that would have allowed Debtor to identify and challenge the activity in the usual course. That pattern of off-docket enforcement activity preceded this bankruptcy filing directly and contributed to the conditions that made a timely challenge impossible before the January 7 sale proceeded. Creditor has now obtained Rule 2004 examination

**DEBTOR'S MOTION FOR STATUS CONFERENCE
AND TO PRESERVE RECORD REGARDING PREPETITION
ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 11

Case 26-10051-CMA    Doc 99    Filed 04/02/26    Ent. 04/03/26 08:28:23    Pg. 11 of 14

authority on an ex parte basis in this case on the date of this filing, reaching accounts belonging to a non-party elderly account holder through a Power of Attorney relationship, using account information first recorded during that same disputed execution. The same counsel who coordinated with Sheriff personnel during the November 19 execution, received financial account information in real time during that execution, and now appears as counsel for creditor in this bankruptcy case obtained that Rule 2004 authority without prior notice to Debtor. While Rule 2004 examinations are typically sought ex parte as a matter of practice, this Court has discretion under 11 U.S.C. § 105(a) to require notice and an opportunity to be heard before such authority is granted where the circumstances warrant. Given that documented history, a prospective notice requirement is not an extraordinary remedy. It is the ordinary procedural protection that the off-docket conduct described above effectively denied Debtor before the petition date, and that this Court has authority to require going forward.

### V.     CONCLUSION

For the foregoing reasons, Debtor respectfully requests that the Court grant this Motion, accept the accompanying materials as a limited record-preservation filing, and set a status conference so that any later disputes in this bankruptcy case proceed against a complete and accurate chronology of the prepetition enforcement conduct that immediately preceded the petition date.

Respectfully submitted,

DATED 2nd day of April, 2026, in Kirkland, WA.

**DEBTOR'S MOTION FOR STATUS CONFERENCE
AND TO PRESERVE RECORD REGARDING PREPETITION
ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 12

*/s/ Ronda McNae*
Ronda McNae
Pro se, Debtor
504 11th Pl,
Kirkland, WA 98033
prose.rmcnae@gmail.com

**DEBTOR'S MOTION FOR STATUS CONFERENCE
AND TO PRESERVE RECORD REGARDING PREPETITION
ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 13

## CERTIFICATE OF SERVICE

I hereby certify that on April 2, 2026, I caused a true and correct copy of the foregoing

Debtor's Motion for Status Conference and to Preserve Record Regarding Prepetition Enforcement

Conduct, together with the supporting declaration, exhibits, and proposed order, to be served via

the Court's CM/ECF system on all parties entitled to electronic notice, including:

**Michael P. Klein**
**Chapter 7 Trustee**
Office of the United States Trustee
700 Stewart Street, Suite 52210
Seattle, WA 98101
trusteeklein@hotmail.com

**Michael M Sperry**
Schweet Linde Rosenblum, PLLC
5601 6TH Ave S., #258
PO Box 80646
Seattle, WA 98108
michaels@schweetlaw.com (counsel for creditor; Michael Fitzgerald)

I declare under penalty of perjury under the laws of the United States that the foregoing is

true and correct.

DATED 2nd day of April 2, 2026, in Kirkland, WA.

*/s/ Ronda McNae*
Ronda McNae
Pro se, Debtor

**DEBTOR'S MOTION FOR STATUS CONFERENCE**
**AND TO PRESERVE RECORD REGARDING PREPETITION**
**ENFORCEMENT CONDUCT**
Case No. 26-10051-CMA - 14